IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

STEVEN DAVID HATHORN                                               PLAINTIFF

        v.                               CIVIL NO. 16-5076

NANCY A. BERRYHILL,[1] Acting Commissioner,
Social Security Administration                                       DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Steven David Hathorn, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) under the provision of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff protectively filed his current application for DIB on July 16, 2012, alleging an inability to work since February 15, 2011, due to the following conditions: COPD (Chronic Obstructive Pulmonary Disease), gout, high blood pressure, CAD (Coronary Artery Disease), depression, borderline diabetes, arthritis, swelling of the legs and feet, claustrophobia, and GERD (Gastroesophageal Reflux Disease). (Doc. 9, p. 71). For DIB purposes, Plaintiff maintained insured status through December 31, 2011. (Doc. 9, p. 277). On June 19, 2013, a

---

[1] Nancy A. Berryhill, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

Notice of Dismissal was entered by the ALJ based on the determination that Plaintiff's request for a hearing was untimely. (Doc. 9, pp. 88-92). A remand order by the Appeals Council was filed on September 17, 2013, directing the ALJ to pursue further proceedings in the case based on the determination that Plaintiff's request for a hearing was in fact timely. (Doc. 9, pp. 93-95). An administrative video hearing was held on March 11, 2014, at which Plaintiff appeared with counsel and testified. (Doc. 9, pp. 33-68).

In a written opinion dated September 11, 2014, the ALJ found that the Plaintiff had the following severe impairments: pulmonary disorder (chronic pulmonary insufficiency, COPD, with tobacco abuse) and obesity. (Doc. 9, pp. 20-22). The ALJ said he met insured status requirements through December 31, 2011. (Doc. 9, p. 20). However, after reviewing the evidence in its entirety, the ALJ determined that through the date last insured, Plaintiff's impairments did not meet or equal the level of severity of any listed impairments described in Appendix 1 of the Regulations (20 CFR, Subpart P, Appendix 1). (Doc. 9, p. 22). The ALJ found that through the date last insured, Plaintiff retained the residual functional capacity (RFC) to perform medium work as defined in 20 CFR § 404.1567(c) except as follows:

> The claimant is able to frequently lift and/or carry twenty five pounds and occasionally fifty pounds, sit for a total of six hours in an eight hour workday, and stand and/or walk for a total of six hours in an eight hour workday. The claimant must avoid concentrated exposure to pulmonary irritants such as odors, dust, gasses, and similar conditions.

(Doc. 9, p. 22). With the help of a vocational expert (VE), the ALJ determined that while Plaintiff was unable to perform his past relevant work, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform through the date last insured, such as appliance assembler, utility worker, and receiving checker. (Doc. 9, pp. 25-26). Ultimately, the ALJ concluded that Plaintiff had not been under a disability within the

meaning of the Social Security Act from February 15, 2011, the alleged onset date, through December 31, 2011, the date last insured. (Doc. 9, pp. 26-27).

Subsequently, on October 22, 2014, Plaintiff requested a review of the hearing decision by the Appeals Council. (Doc. 9, pp 12-13). The Appeals Council considered additional evidence submitted by Plaintiff, and his request was denied on February 3, 2016. (Doc. 9, pp. 5-10). Plaintiff filed a Petition for Judicial Review of the matter on April 4, 2016. (Doc. 1). Both parties have submitted briefs, and this case is before the undersigned for report and recommendation. (Docs. 10, 11).

The Court has reviewed the transcript in its entirety. The complete set of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

**II.    Evidence Submitted:**

At the hearing before the ALJ on January 29, 2013, Plaintiff testified that he was born in 1955. (Doc. 9, p. 36). Plaintiff testified that he completed the eleventh grade and obtained a GED. (Doc. 9, p. 36). Plaintiff's past relevant work consisted of long-haul truck driving. (Doc. 9, p. 40).

Prior to the relevant time period, in January of 2004, Plaintiff underwent a heart catheterization, left ventriculogram, and coronary angiography. (Doc. 9, p. 358-360). In March of 2010, Dr. Travis Embry at the Boston Mountain Rural Health Center treated Plaintiff for GERD, HTN (Hypertension), allergies, CAD, Hyperlipidemia, and RAD (Reactive Airway Disease). (Doc. 9, pp. 333-334). In July of 2010, Plaintiff was seen by Dr. Embry for CAD, HTN, Hyperlipidemia, joint pain, DJD/Osteoarthrosis (Degenerative Joint Disease), and gout. (Doc. 9, pp. 326-332). Treatment notes reflect that Plaintiff was obese (weighing 268 pounds)

3

and was a smoker. (Doc. 9, pp. 326, 328, 329). Moreover, a July of 2010, c-spine imaging revealed anterior osteophytosis at C4-5 and C5-6 with no acute cervical spine finding. (Doc. 9, p. 336).

During the relevant time period, Plaintiff's medical records show a normal two-view chest x-ray performed on February 15, 2011. (Doc. 9, p. 335). Soon thereafter, on February 25, 2011, Plaintiff was seen by Dr. Embry with complaints of trouble breathing and bilateral leg and foot swelling. Plaintiff was assessed with COPD, DJD/Osteoarthrosis unspecified, CAD and shortness of breath. Clinic notes also reflect that Plaintiff suffered from gout, central obesity, and tobacco (cigarette) addiction. (Doc. 9, pp. 324-325). On March 4, 2011, Dr. Embry completed an Attending Physicians Statement where he opined that Plaintiff could perform less than sedentary work and noted that he needed an evaluation by cardiology for chest pain. (Doc. 9, p. 441). In an Employer Statement also completed that date, Dr. Embry opined that Plaintiff was totally disabled from April 1, 2011, through May 1, 2011, adding that he was uncertain as to when Plaintiff would be able to return to work. (Doc. 9, p. 442).

On March 28, 2011, Plaintiff was seen by Dr. Embry for complaints of head and chest congestion and gout in his right toe. (Doc. 9, pp. 322-323). Plaintiff was assessed with HTN, gout unspecified, COPD, and CAD, and was counseled on tobacco use, poor nutrition choices, lack of exercise, obesity, and other lifestyle modifications. (Doc. 9, pp. 322-323). On that same day, Dr. Embry completed an Attending Physicians Statement where he indicated a diagnosis of COPD, RAD, Gout, DJD, HTN, Angina, and RLS (Restless Legs Syndrome). (Doc. 9, p. 428). He opined Plaintiff was totally disabled from "3/11 through current" and noted Plaintiff's treatment plan of a referral to cardiology, lifestyle modifications, and medication. (Doc. 9, p. 428).

On June 7, 2011, Plaintiff underwent an eye examination by J.H. McAlister, Jr., O.D., during which Plaintiff reported that he had not noticed any changes in his eyes and that he had not had problems or issues with his eyes since his last visit in February of 2010. (Doc. 9, p. 357). Plaintiff was prescribed corrective lenses; however, no work restrictions were placed on Plaintiff. (Doc. 9, p. 357).

On July 18, 2011, Plaintiff saw Dr. Embry, requesting a release to return to work. Plaintiff reported that he would like to go back to work, that he was feeling much better, that he had lost weight, that his gout was better, that he was getting some exercise while on the road for work, and that he had improved his eating habits. (Doc. 9, p. 320). Plaintiff reported that although he had cut back on the smoking, he had not quit. (Doc. 9, p. 320). Plaintiff was assessed with HTN, gout, COPD and CAD. (Doc. 9, p. 321). On that date, an Attending Physician Statement indicated a diagnosis of HTN, gout, COPD, RAD, GERD, and CAD. (Doc. 9, p. 430). Dr. Embry opined Plaintiff was totally disabled from "2/11 through 7/20/11," and could return to work fulltime as of July 20, 2011. (Doc. 9, p. 430).

On September 12, 2011, Plaintiff returned to Dr. Embry with complaints that he was "hurting all over" and was having trouble breathing. (Doc. 9, pp. 318-319). Clinic notes indicted that Plaintiff had some moderate depression, was still smoking, had tingling in his fingers and right arm pain, had poor sleep hygiene, and weighed 262.6 pounds. (Doc. 9, pp. 318-319). Plaintiff was counseled to stop smoking and was assessed with HTN, COPD, DJD/Osteoarthrosis unspecified, CAD, and hyperlipidemia. (Doc. 9, pp. 318-319). Dr. Embry also completed an Attending Physicians Statement on that date, where Dr. Embry opined that Plaintiff became disabled on September 1, 2011, and that Plaintiff could perform less than

5

sedentary work. (Doc. 9, p. 350). Dr. Embry further opined that Plaintiff was limited in that he could not drive long distances. (Doc. 9, p. 350).

After the relevant time period, on January 12, 2012, Dr. Embry completed another Attending Physicians Statement, listing diagnoses of RAD, gout, DJD, HTN, RLS, COPD, and CAD and opined that Plaintiff was totally disabled from "3/11 through current." (Doc. 9, p. 351, 447).

On August 20, 2012, Dr. Kevin Santulli, Ph.D., performed a Psychiatric Review Technique. (Doc. 9, p. 76). In that review, he determined that prior to December 31, 2011, Plaintiff had only mild restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence or pace. (Doc. 9, p. 76). Plaintiff was found to have no repeated episodes of decompensation; however, the report noted that Plaintiff's limitations arise from depression. (Doc. 9, p. 76). The report also noted Plaintiff was not under any mental health treatment or on any psychotropic medication and concluded that Plaintiff's mental impairment is not severe. (Doc. 9, p. 77).

On September 5, 2012, Plaintiff underwent spirometric testing by Dr. Kyle Hardy. (Doc. 9, pp. 341-345). A Pulmonary Function Report revealed that Plaintiff had mild obstructive lung disease with no evidence of improvement after bronchodilator therapy. (Doc. 9, p. 341).

On September 8, 2012, Dr. James Wellons conducted a Case Analysis. (Doc. 9, p. 75). After reviewing the record, Dr. Wellons opined that Plaintiff did not have a severe residual somatic impairment prior to the date last insured of December 31, 2011. (Doc. 9, p. 75).

On December 3, 2012, Dr. Abesie Kelly, Ph.D. conducted a Psychiatric Review Technique in which she affirmed Dr. Santulli's opinion that prior to his date last insured, Plaintiff had only mild limitations in the areas of activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace, and no limitations in the area episodes of decompensation. (Doc. 9, p. 85). Also on that date, Dr. Judith Forte conducted a Case Analysis and affirmed the findings of Dr. Wellons' September 8, 2012, Case Analysis that Plaintiff did not have a severe residual somatic impairment prior to the date last insured of December 31, 2011. (Doc. 9, p. 84).

On November 18, 2013, Plaintiff saw Dr. Embry for continued complaints of congestion in his head and chest. (Doc. 9, p. 361-366). Dr. Embry's clinic notes reference Plaintiff's continued smoking and his obesity. (Doc. 9, p. 361-366). Plaintiff was assessed with a cough, RAD, and CAD. (Doc. 9, p. 361-366). On that day, Dr. Embry also completed several forms, one of which was an abbreviated Physical RFC Assessment, where he opined that Plaintiff could not sit/stand/walk in combination for eight hours in an eight hour work day and that Plaintiff had significant limitations in the ability to reach/push/pull bilaterally in the upper extremities. (Doc. 9, p. 352). Dr. Embry also completed a Mental RFC Assessment where he opined that Plaintiff had no useful ability to function on a sustained basis (which is defined as an eight-hour work day for five days in a full work week) in the area of performing at a consistent pace without an unreasonable number and length of rest periods. (Doc. 9, p. 353). Also on that day, Dr. Embry completed a Physical Medical Source Statement. (Doc. 9, p. 354). In that assessment, Dr. Embry opined that Plaintiff could perform less than sedentary work and must avoid concentrated exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, hazards (machinery or heights). (Doc. 9, pp. 354-356). Dr. Embry noted that

7

Plaintiff had no manipulative limitations. (Doc. 9, p. 356). The document reflected that the time frame reflected in the assessment was February 15, 2011, through the present. (Doc. 9, p. 356).

On March 4, 2014, Dr. Embry completed a Mental RFC Assessment where, as previously found, Plaintiff had no useful ability to function on a sustained basis in the area of performing at a consistent pace without an unreasonable number and length of rest periods. (Doc. 9, p. 370). On that date, Dr. Embry completed another Physical Medical Source Statement finding that Plaintiff could perform less than sedentary work. (Doc. 9, pp. 371-373). Lastly, on that date, Dr. Embry completed a Physical RFC Assessment finding that Plaintiff required four or more unscheduled work breaks in an eight-hour work day due to physical restrictions. (Doc. 9, p. 370).

On March 14, 2014, Plaintiff saw Dr. Embry for a disability consultation as well as for treatment for severe congestion and swelling in his feet. (Doc. 9, p. 380). Dr. Embry's notes reflected Plaintiff's obesity, with a weight of 272.3 pounds, and that he was counseled on smoking and urged to quit. (Doc. 9, pp. 380, 385). Plaintiff was assessed with the following: CAD, HTN, DJD/Osteoarthrosis, unspecified, and COPD. (Doc. 9, p. 380).

On April 8, 2014, Dr. Travis Embry signed a Mental RFC assessment where he indicated there were no limitations. On that date, Dr. Embry also completed another Physical Medical Source Statement finding that Plaintiff could perform less than sedentary work. (Doc. 9, pp. 390-392). Moreover, Dr. Embry completed another Physical RFC Assessment finding that Plaintiff needed to elevate his legs every few hours. (Doc. 9, p. 393). Lastly, Dr. Embry

8

completed a Physical Exertions Limitations Form finding that Plaintiff's physical limitations allow for only sedentary work. (Doc. 9, p. 396).

On April 14, 2014, Plaintiff saw Dr. Embry for a cough and congestion. (Doc. 9, pp. 417-420). Dr. Embry noted Plaintiff's obesity (weighing 276 pounds), his wheezing, and that he was a smoker of 20-21 cigarettes a day. (Doc. 9, pp. 417-420). Plaintiff was assessed with CAD, COPD, RAD, and cough. (Doc. 9, p. 417). On that date, Dr. Embry signed a Mental RFC Assessment Form indicating there were no limitations and completed a Physical Medical Source Statement finding that Plaintiff could perform less than sedentary work. (Doc. 9, p. 398-400). Lastly, in a Physical RFC Assessment completed by Dr. Embry, he found that Plaintiff could not sit, stand, or walk in combination for eight hours in an eight hour work day. (Doc. 9, p. 401).

### III.  Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent

positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. § 404.1520(a)(4). Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520(a)(4)(v).

## IV. Discussion:

Plaintiff makes the following arguments on appeal: 1) the ALJ erred in failing to fully and fairly develop the record; 2) the ALJ erred in his step two determination; and 3) the ALJ erred in his RFC determination.

### A. Insured Status and Relevant Time Period:

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on December 31, 2011. Regarding Plaintiff's application for DIB, the overreaching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of February 15, 2011, his alleged onset date of disability, through December 31, 2011, the last date he was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB, he must prove that on or before the expiration of his insured status, he was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). Records and medical opinions from outside the insured period can only be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded." Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (holding that the parties must focus their attention on claimant's condition at the time he last met insured status requirements).

### B. Full and Fair Development of the Record:

Plaintiff argues that the ALJ erred in failing to fully develop the record by failing to order an orthopedic physical consultative examination. The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995). The ALJ's duty to

11

fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). The ALJ, however, is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995). "While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment." McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011).

In this case, the record consists of a case analysis and psychiatric review technique completed by non-examining medical consultants Plaintiff's medical records, which included clinic notes from treating physicians, physical and mental RFC assessments, attending physician statements, as well as medical source statements-all completed by his primary care physician. After reviewing the entire record, the Court finds the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period. Accordingly, the undersigned finds the ALJ fully and fairly developed the record.

### C. **Plaintiff's Impairments:**

Plaintiff argues that the ALJ erred in his Step Two by failing to find that Plaintiff's musculoskeletal impairments were medically determinable and met severity. At Step Two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. See 20 C .F.R. § 404.1520(c). While "severity is not an onerous requirement for the claimant to meet…it is also not a toothless standard." Wright v. Colvin, 789 F.3d 847, 855 (8th Cir. 2015) (citations omitted). To be severe, an impairment only needs to have more than a minimal impact on a claimant's ability to perform work-related activities. See Social Security

Ruling 96-3p. The claimant has the burden of proof of showing he suffers from a medically-severe impairment at Step Two. See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000).

While the ALJ did not find all of Plaintiff's alleged impairments to be severe impairments, the ALJ specifically discussed the alleged impairments in the decision, and clearly stated that he considered all of Plaintiff's impairments, including the impairments that were found to be non-severe. See Swartz v. Barnhart, 188 F. App'x 361, 368 (6th Cir. 2006) (where ALJ finds at least one "severe" impairment and proceeds to assess claimant's RFC based on all alleged impairments, any error in failing to identify particular impairment as "severe" at step two is harmless); Elmore v. Astrue, 2012 WL 1085487 *12 (E.D. Mo. March 5, 2012); see also 20 C.F.R. § 404.1545(a)(2) (in assessing RFC, ALJ must consider "all of [a claimant's] medically determinable impairments ..., including ... impairments that are not 'severe' "); § 404.1523(c) (ALJ must "consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity"). Based on a review of the record, the Court finds the ALJ did not err in setting forth Plaintiff's severe impairments during the relevant time period.

### D. Subjective Complaints and Symptom Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in

13

the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. The record reflects Plaintiff's friend, Barbara Walden, completed a Function Report on August 5, 2012, wherein she reported that Plaintiff could manage his personal care with the exception of some assistance washing his hair, sometimes prepare his own frozen dinner meals, complete household chores if no dust or heavy lifting was involved, drive a car, and go out alone. (Doc. 9, pp. 263-265). Ms. Waldon also reported that Plaintiff needed no reminders to care for himself or take his medication; that he went outside every day; that he could pay bills, count change, handle a savings account, and use a checkbook or money order. (Doc. 9, pp. 264-265). Plaintiff enjoyed watching television, and he was able to spend time with others. (Doc. 9, p. 266). Although Plaintiff alleges that he quit work due to his condition in 2011, he testified at the hearing before the ALJ on March 11, 2014, that he was able to go back to work full time in 2013. (Doc. 9, pp. 42-43). Due to swelling in his feet; however, he began to miss work and ultimately only worked full time for two and one-half months. (Doc. 9, p. 46).

This level of activity belies Plaintiff's complaints of pain and limitation, and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a Plaintiff's subjective allegations of disabling pain. See Hutton v. Apfel, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application supported by substantial evidence where daily activities-making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability).

With respect to Plaintiff's alleged respiratory impairments, the ALJ pointed out that despite the repeated recommendation to stop smoking by his medical providers, Plaintiff continued to smoke throughout the relevant time period. See Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997) (noting that a failure to follow prescribed treatment may be grounds for denying an application for benefits). This is not a case in which the correlation between Plaintiff's smoking and Plaintiff's impairment is not readily apparent. Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008) (citations omitted). To the contrary, there is no dispute that smoking has a direct impact on Plaintiff's pulmonary impairments.

With respect to Plaintiff's alleged physical impairments, the record revealed that Plaintiff was treated conservatively and appeared to experience some relief with the use of medication. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); see Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) (course of conservative treatment contradicted claims of disabling pain). The record revealed that Plaintiff requested a release to return to work in July of 2011. While Plaintiff returned to Dr. Embry with complaints of increased pain in September of 2011, the record shows Dr. Embry continued to treat Plaintiff conservatively.

With respect to Plaintiff's alleged mental impairments, the record fails to establish that Plaintiff sought on-going and consistent treatment from a mental health provider. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against Plaintiff's claim of disability). The Court finds substantial evidence supports the ALJ's determination that Plaintiff did not have a disabling mental impairment.

While it is clear that Plaintiff suffers with some degree of limitation, he has not established that he was unable to engage in any gainful activity prior to the expiration of his

insured status. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### E. The ALJ's RFC Determination:

Plaintiff alleges that Plaintiff was unable to perform medium work with exceptions; thus, the ALJ erred in his RFC determination. RFC is the most a person can do despite that person's limitations. See 20 C.F.R. §§ 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. See Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. See Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In deciding whether a claimant is disabled, the ALJ considers medical opinions along with "the rest of the relevant evidence" in the record. 20 C.F.R. §§ 404.1527(b). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." Wagner v. Astrue, 499

F.3d 842, 848 (8th Cir. 2007), citing Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001) (internal citations omitted).

The SSA regulations set forth how the ALJ weighs medical opinions. The regulations provide that "unless [the ALJ] give[s] a treating source's opinion controlling weight ... [the ALJ] consider[s] all of the following factors in deciding the weight [to] give to any medical opinion": (1) examining relationship; (2) treating relationship; (3) supportability of the opinion; (4) consistency; (5) specialization; and, (6) "any factors [the applicant] or others bring[s] to [the ALJ's] attention." 20 C.F.R. §§ 404.1527(c), 416.927(c). The regulations provide that if the ALJ finds "that a treating source's opinion on the issue(s) of the nature and severity of [the applicant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with the other substantial evidence in [the applicant's] record,* [the ALJ] will give it controlling weight." Id. at §§ 404.1527(c)(2), 416.927(c)(2) (emphasis added).

In his RFC determination, the ALJ considered Plaintiff's subjective complaints, the medical records, and the evaluations of the non-examining medical examiners. In determining that Plaintiff could perform medium work with limitations prior to the expiration of his insured status, the ALJ specifically discussed the relevant medical records, and the medical opinions of treating, examining and non-examining medical professionals, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians") (citations omitted); Prosch v. Apfel, 201 F.3d 1010, 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).

With regard to the Attending Physician's Statements (Statement) completed by Dr. Embry, Plaintiff argues that the ALJ did not give this opinion proper weight. The ALJ addressed and gave great weight to the treatment records, prior to his date late insured, of Plaintiff's primary care physician, Dr. Embry, who treated Plaintiff for COPD, DJD/Osteoarthrosis, CAD, shortness of breath, gout, HTN and hyperlipidemia, during the relevant time period. (Doc. 9, pp. 22-25). These treatment records, however, did not indicate any recommendations other than conservative treatment (medication) and lifestyle changes for Plaintiff's conditions. Although a cardiovascular evaluation was recommended by Dr. Embry, it did not appear that Plaintiff followed through with such an evaluation.

The ALJ further discussed Dr. Embry's physical RFC Assessments of November 18, 2013, and April 8, 2014, finding Plaintiff could perform sedentary work with limitations. The ALJ noted that the RFC Assessments did not reference any objective testing results, the findings were extreme in nature, and the opinions were not reasonably supported by his treatment records. (Doc. 9, pp. 24-25). The ALJ also noted that Plaintiff was in fact performing some work during this time, which was not supportive of Dr. Embry's RFC Assessments. (Doc. 9, p. 24). Therefore, the ALJ gave these assessments little weight. (Doc. 9, pp. 24-25).

The ALJ also noted the case analysis by the non-examining medical consultant, finding Plaintiff able to perform medium level work. (Doc. 9, p. 75). The ALJ ultimately imposed additional environmental limitations, despite Plaintiff's continued smoking. (Doc. 9, p. 22). It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) (citations omitted).

The ALJ also took Plaintiff's obesity into account when determining that Plaintiff could perform medium work with limitations. Heino v. Astrue, 578 F.3d 873, 881-882 (8th Cir. 2009) (when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal).

After reviewing the record, the Court finds substantial evidence supports the ALJ's determination that the limitations set forth in Dr. Embry's statements appeared to be more severe than warranted by the objective evidence of record. As noted by the ALJ, a review of Dr. Embry's treatment notes failed to support the limitations set forth in the Statements. Perkins v. Astrue, 648 F.3d 892, 899 (8th Cir. 2011) (It is permissible for the ALJ to discount an opinion that is inconsistent with physician's own treatment notes).

### F. Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing work as an appliance assembler, a utility worker, or a receiving checker. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### V. Conclusion:

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 18th day of April, 2017.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE